IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CARISH A. BISHOP,              )
                              )
              Plaintiff,      )
                              )
v.                            )    Case No. CIV-16-260-RAW-KEW
                              )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social        )
Security Administration,      )
                              )
              Defendant.      )

**REPORT AND RECOMMENDATION**

Plaintiff Carish A. Bishop (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 39 years old at the time of the ALJ's decision. Claimant completed her education through the seventh grade. Claimant has worked in the past as a cleaner and light housekeeper. Claimant alleged an inability to work beginning on August 29, 2012 due to limitations caused by anxiety, depression, agoraphobia, sleep apnea, PTSD, and bipolar disorder.

## Procedural History

On August 29, 2012, Claimant protectively filed for

supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On August 29, 2014, Administrative Law Judge ("ALJ") James Bentley conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma.  On October 16, 2014, the ALJ issued an unfavorable decision.  On May 4, 2016, the Appeals Council denied review of the ALJ's decision.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform light work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly assess Claimant's credibility; (2) reaching an RFC which did not include all of Claimant's limitations; and (3) failing to resolve a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles ("DOT")*.

4

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of depression, anxiety, borderline personality disorder, panic disorder with agoraphobia, psychosis, methamphetamine abuse by history, spondylosis of the cervical spine, and obesity. (Tr. 24). The ALJ concluded that Claimant retained the RFC to perform light work, except that she was limited to simple, repetitive work with routine supervision. She must have only occasional contact with co-workers and supervisors and must not have work-related contact with the general public. The ALJ determined Claimant could not perform work at a production rate pace (for example, assembly line work) but can perform goal-oriented work (for example, office cleaning). (Tr. 27).

After consulting with a vocational expert, the ALJ found Claimant could perform the representative job of motel housekeeper, which the ALJ determined existed in sufficient numbers both nationally and regionally. (Tr. 33-34).

Claimant contends the ALJ failed to properly evaluate the credibility of her subjective statements concerning her limitations. Claimant testified she grocery shops but does not drive. (Tr. 44). She tries to stay in as much as possible. (Tr. 45). She cleans some but her husband does most of the cleaning and cooking. (Tr.

5

46).  She used methamphetamine in the past but has not in ten years.
(Tr. 47).  She consider her most severe problem to be not being able
to leave her home and never getting enough sleep.  (Tr. 51).

Claimant testified that she hears voices every night and has
for some time.  The voices whisper but she cannot understand them.
She also sees shadows, mainly at night.  She has problems leaving
one setting for another, such as leaving one room to go into
another.  (Tr. 52).  She locks her room to feel safe.  She describes
leaving a room and entering another as entering a different reality
which requires her to adjust.  She has good days sometimes twice a
week where she has energy and cleans.  (Tr. 53).    Claimant
testified she bathes three or four times a day because she feels
stuff crawling on her.  She knows it's not there.  (Tr. 55).  She
does not drive and finds it hard to ride in the car because of the
changing houses, trees, and signs.  Her brain cannot absorb too
much.  She has sleep apnea and uses a machine every night, but still
wakes up not able to breathe.  (Tr. 56).

The ALJ found Claimant to be "not entirely credible."  He
stated that the medical evidence demonstrates that Claimant was not
as limited as she alleged.  He based this finding on the limited
treatment history, physical examinations, and non-compliance with
medications.  (Tr. 28).

Claimant was evaluated by Dr. William Cooper on December 1,

6

2012.  Dr. Cooper noted that Claimant had a depressed affect but was awake, alert, and oriented x 3.  Her recent and remote memories were intact.  Her speech was 100% intelligible.  Her thought processes appeared normal.  No signs of overt pathology were noted.  (Tr. 371).

Dr. Robert Spray also conducted a consultative mental status examination of Claimant on December 19, 2012.  Claimant was cooperative with the interview.  Her mood was depressed and anxious and her affect was "quite labile."  Her speech was noted as normal in fluency, rate, and volume.  Claimant's thought processes were "derailed" at times.  (Tr. 379).  Claimant told Dr. Spray that sometimes she was afraid that demons were going to possess her children and related that one of her children has seen demons since age two.  Dr. Spray believed Claimant engaged in excessive self-blame.  Claimant stated that she saw black shadows that she thinks are demons.  She hears whispers but does not know what they are saying.  Sometimes she wakes up and smells something cooking when there is no one present.  Claimant was oriented to time, place, and person.  Her cognitive testing was largely normal.  (Tr. 380).

Dr. Spray diagnosed Claimant with panic disorder with agoraphobia; mood disorder, NOS; rule out schizophrenia, paranoid type; borderline personality disorder with schizotypal, paranoid, and avoidant features; and obsessive compulsive traits.  He assigned

7

Claimant a GAF of 30-35. Id. He also concluded Claimant has moderate difficulty with attention and concentration and would have difficulty persisting with work-like tasks secondary to variations in mood and internal dialogue. She would also have difficulty completing tasks in a timely manner because of distractions from internal dialogue, occasional hallucinations, anxiety, and depression. He perceived no indication of symptom exaggeration or malingering. (Tr. 381).

The ALJ's reasoning in questioning Claimant's credibility finds some foundation in relying upon gaps in treatment found in the record. Claimant sought treatment from Dr. Eric Broadway on October 10, 2012 but did not return for treatment until June 17, 2013. (Tr. 387, 393). Claimant then saw Dr. Broadway again on October 2, 2013 and November 13, 2013. (Tr. 399, 402). Claimant returned on May 22, 2014. (Tr. 408). The ALJ was within his assessment rights to consider these gaps in finding Claimant's claims of severe mental limitations suspect.

Claimant also failed to comply with the medication regimen established by her physicians. Claimant was fearful of side effects (Tr. 408) and poisoning her body. (Tr. 393).

Four elements are examined when reviewing the impact a claimant's failure to follow treatment has on a disability determination: (1) whether the treatment would restore the

8

claimant's ability to work, (2) whether the treatment was prescribed, (3) whether the treatment was refused, and, if so, (4) whether the refusal was without justifiable excuse. Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). Claimant has not provided a justifiable reason for not following her treatment regimen.

Generally, it is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back,

9

standing for 15 to 20 minutes every hour, or sleeping on a board);
and (7) any other factors concerning the individual's functional
limitations and restrictions due to pain or other symptoms. Soc.
Sec. R. 96-7p; 1996 WL 374186, *3. The ALJ relied upon appropriate
factors in evaluating the credibility of Claimant's statements.

### RFC Determination

Claimant asserts the ALJ did not include all of Claimant's
limitations in the RFC. She references her own statements and the
findings of Dr. Spray. Her testimony was found not to be entirely
credible. The moderate limitations found by Dr. Spray were
accommodated and recognized in the ALJ's decision and RFC. (Tr. 26-
27).

"[R]esidual functional capacity consists of those activities
that a claimant can still perform on a regular and continuing basis
despite his or her physical limitations." White v. Barnhart, 287
F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional
capacity assessment "must include a narrative discussion describing
how the evidence supports each conclusion, citing specific medical
facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ
must also discuss the individual's ability to perform sustained
work activities in an ordinary work setting on a "regular and
continuing basis" and describe the maximum amount of work related

activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

Moreover, the low GAF score of 30-35 is troubling. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. See, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, supra at 3. However, a GAF of 50 or

less does suggest an inability to keep a job.  <u>Id</u>. citing <u>Oslin v.</u>
<u>Barnhart</u>, 2003 WL 21666675, 3 (10th Cir. (Okla.)).

An ALJ is required to consider all relevant evidence in the
record.  Soc. Sec. R. 06-03p.  He is not, however, required to
discuss every piece of evidence in the record.  <u>Clifton v. Chater</u>,
79 F.3d 1007, 1009-10 (10th Cir. 1996).  A GAF score may be of
considerable help to the ALJ in formulating the RFC but it is not
essential to the RFC's accuracy and "taken alone does not establish
an impairment serious enough to preclude an ability to work."
<u>Holcomb v. Astrue</u>, 2010 WL 2881530, 2 (Okla.)(unpublished opinion)
citing <u>Howard v. Comm. of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir.
2002).  The ALJ was under no legal obligation to discuss Claimant's
GAF scores.  This Court takes the ALJ at his word that he
considered the GAF score in the overall consideration of evidence.
(Tr. 31).

### Conflict with the DOT

Claimant contends the ALJ specified no contact with the
general public in his hypothetical questioning of the vocational
expert and the expert identified motel housekeeper as an available
job.  Claimant states that the requirements of the motel
housekeeper job in the *DOT* included contact with the public and the
expert failed to explain the inconsistency.  The *DOT* states that

Cleaner, Housekeeper does not require significant contact with people and talking is not an activity involved with the job. *DOT*, 323.687-014. The vocational expert reinforced that fact in his testimony. (Tr. 62). This Court finds no significant deviation from the *DOT* in the vocational expert's testimony which required further clarification or explanation before the ALJ could rely upon the testimony.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of July, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE